UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KIMBERLY D. LAND,            ) | |
| ) | |
| Plaintiff,       ) | |
| ) | |
| vs.                              ) | Cause No. 1:12-cv-67-WTL-DKL |
| ) | |
| MICHAEL J. ASTRUE Commissioner of  ) | |
| the Social Security Administration,  ) | |
| ) | |
| Defendant.     ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Kimberly D. Land requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). The Court now rules as follows.

### I.     PROCEDURAL HISTORY

On December 29, 2008, Land filed an application for SSI alleging disability beginning September 8, 2000. Land's application was initially denied on May 14, 2009, and again upon reconsideration on July 20, 2009. Thereafter, Land requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on October 18, 2010, via video conference before ALJ John Murdock. Land and her counsel appeared in Indianapolis, Indiana and the ALJ presided over the hearing from Falls Church, Virginia. During the hearing, Gail H. Franklin testified as a vocational expert via telephone. On February 25, 2011, the ALJ issued a decision denying Land's application for benefits. The Appeals Council upheld the ALJ's decision and

denied Land's request for review on November 29, 2011. This timely action for judicial review ensued.

## II.    EVIDENCE OF RECORD

The relevant medical evidence of record follows.

Land suffers from chronic back pain, hypotension, hypertension, and a status post metacarpal shaft fracture. At the hearing, Land testified that she underwent a rhizotmy on her back and had pain blocks several years before the hearing.[1] Additionally, in September 2007, Land sustained a shaft fracture in her left hand after falling down. She underwent a closed reduction and percutaneous pinning of the left fourth metacarpal on September 28, 2007. Land had a second surgery on October 27, 2007 to remove the pins in her hand. Land received follow-up care from her doctor until May of 2008.

In January of 2008, Land complained of worsening back pain and she was treated in the intensive care unit for five days. On February 13, 2008, Land had diagnoses of osteoarthritis, depression, fibromyalgia, and hypertension. Thereafter, she was prescribed pain medication and an antidepressant. Over the next eight months, Land described decreasing pain levels.

On March 19, 2009, state agency reviewing doctor Dr. Joelle Larsen completed a Psychiatric Review Technique ("PRT"). Dr. Larsen determined that, although Land complained of a "nervous breakdown" in 2006 or 2007, Land did not suffer from a medically determinable impairment. There was also a notation on the PRT that Land "has not had a nervous breakdown or heard voices since that one episode," implying that Land previously heard voices at some point in 2006 or 2007.

---

[1] During her consultative physical exam in May 2009, however, the doctor noted that Land denied any history of surgeries.

In May 2009, Dr. Mahmoud Yassin Kassab performed a consultative physical examination. At that time, Land complained of chronic back pain in the upper, middle, and lower back that had worsened over the last ten years. She rated the pain as a 7 on a scale of 10 at the exam. She further complained that the pain radiated down to her right knee and worsened with lifting, bending, and twisting maneuvers. Land also alleged that she could only walk 50 feet and go up only four steps at a time because of her pack pain. After the physical exam, Dr. Kassab concluded that Land is able to grasp, lift, carry, manipulate objects in both hands and perform repeated movements with her feet.  He further opined that Land is able to bend over without restriction, squat normally, and sit, stand, and walk normally without using any assistive device. Dr. Kassab also stated that with an adjustment to her pain medication, Land would be able to perform her activities of daily living without any problem.

In August 2010, Land again complained of worsening lumbar and thoracic back pain.

In December 2010, Land fell and hurt her back and neck and was admitted to the hospital through the emergency room. At that time, her medications included Tolectin, Neurontin, Nortiptyline, stool softeners, Baclofen, Phenergan, Cymbalta, and Norco. X-rays and CT scans taken on December 23, 2010, indicated degenerative disc disease, disc space narrowing, marginal spurring, and a subcortical cyst. Land was also experiencing involuntary jerking of her arms and legs, however, upon examination, the jerking had subsided and no etiology could be determined. While at the hospital, Land developed respiratory failure with hypoxia and hypercapnia and was admitted for treatment of the respiratory issues.

In January 2011, while still hospitalized, Land reported a long history of fibromyalgia and back and neck pain. She complained of being, more or less, incapacitated by the symptoms over the previous year. She further stated that she could do very little physical activity, and that

much of her down time was spent in bed. Thereafter, Land was referred to physical therapy. At her initial assessment, the therapist noted that Land could tolerate only 5 minutes of functional activities before requiring a rest break and 5 minutes of sitting upright on the end of the bed due to her back pain. Land also complained that her back pain was a 10 on a scale of 10. Land further reported that her husband did the cleaning, laundry, and cooking in their home and that she required assistance with bathing.

In February 2011, Land underwent a sleep study. The study showed severe, complex sleep apnea.

In March of 2011, Land complained of shortness of breath. Test results, however, were normal.

### III.   APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d) (1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step

three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.,* and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Land had not engaged in substantial gainful activity since her application date of December 29, 2008. At step two, the ALJ concluded that Land had the following severe impairments: chronic lower back pain, hypotension, hypertension, and a status post metacarpal shaft fracture of her left hand. The ALJ further concluded that Land's anxiety

and depression were "non-medically determinable impairments." At step three, the ALJ determined that Land's severe impairments did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Land had the residual functional capacity ("RFC") to perform light work with the following limitations: she had the ability to only occasionally climb without ladders, ropes, scaffolds, she could only occasionally balance, stop, kneel, crouch, or crawl, and she could not work in environments with vibrations, and height and machine hazards. Given this RFC, and taking into account Land's age, education, and work experience, the ALJ determined that Land could perform jobs existing in significant numbers in the national economy, those being a small production assembler, ticket taker, or laundry worker. The ALJ further determined that even if Land were limited to a sedentary RFC, she could work as a table worker, a change account clerk, or a telephone quotation clerk. Accordingly, the ALJ concluded that Land was not disabled as defined by the Act from December 29, 2008, through the date of his decision.

## V. DISCUSSION

Land advances several objections to the ALJ's decision; each is addressed below.

### A. Identification of Listings

Land argues that the ALJ failed to fully satisfy step three of the sequential evaluation process. Specifically, Land maintains that the ALJ was required to, but did not, identify or discuss the listings that Land did not meet.

Under the third step of the sequential evaluation process,

> [A] claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the Listing of Impairments. The listings specify the criteria for impairments that are considered presumptively disabling. A claimant may also demonstrate presumptive disability by showing that her impairment is accomplished by symptoms that are equal in severity to those described in a specific listing. In considering whether a claimant's condition meets or equals a

> listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing.

*Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citations omitted). In *Barnett*, the plaintiff sought disability insurance benefits due to her nonconvulsive epileptic seizures. After a hearing, the AJL issued a decision denying her application. The ALJ, however, did not mention by name the listing relevant to the plaintiff's disability claim.[2] Rather, in relation to step three, the ALJ simply said that he did not believe the plaintiff's testimony regarding the number of seizures she suffered. As a result, the Seventh Circuit concluded that they could not "discern if the ALJ ever considered whether [the plaintiff's] impairment equals Listing 11.03." *Id.* at 670. Accordingly, the case was remanded to the Social Security Administration for further proceedings.

In this case, the ALJ stated the following regarding whether Land satisfied step three of the sequential evaluation process:

> The claimant has "severe" impairments within the meaning of the Regulations, but the impairments do not meet or medically equal any of the listed impairments. The claimant does not allege that she has impairments of listing level severity, nor has she met her burden of presenting medical evidence that supports such a finding. I have reviewed the medical evidence of record in its entirety and [find] that the claimant's impairment does not meet or equal the level of severity set forth in any of the listed impairments.

R. at 20. The ALJ did not identify the listed impairments he considered. More importantly, he did not discuss in any meaningful way why Land's impairments and symptoms fail to meet or equal the relevant listings. Thus, the Court is unable to determine whether the ALJ considered the various listings relevant to Land's impairments (e.g., Listing 1.02 and/or Listing 1.04). As a

---

[2]Listing 11.03 applies to nonconvulsive epilepsy which is characterized by seizures that occur "more frequently than once weekly" and with "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day." *Id.* at 668-9 (quoting 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 11.03).

result, the ALJ's analysis in relation to step three of the sequential evaluation process is inadequate and warrants remand.

### B. Articulation of S.S.R. 96-7p and S.S.R. 96-8p Factors

In addition to the foregoing, Land alleges that the ALJ failed to properly articulate his application of the factors outlined in S.S.R. 96-7p and S.S.R. 96-8p, and, specifically, that the ALJ did not properly evaluate and discuss Land's subjective complaints of pain and immobility, her medications and their side effects, and the effect of Land's combined severe and non-severe impairments.

With regard to Land's subjective complaints, the ALJ must make a credibility determination using factors outlined in S.S.R 96-7p. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify the finding with specific reasons." *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). "Furthermore, the ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." *Id.* (citations omitted).

In this case, the ALJ made the following determination regarding Land's symptoms:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity.[3]

---

[3] As is so often the case, the ALJs credibility discussion begins with the finding that the claimants statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they are inconsistent with the judges assessment of his residual functional capacity. The Seventh Circuit recently has criticized this language as meaningless boilerplate seen frequently in decisions from ALJs, has criticized this template as unhelpful, and has explained that it backwardly implies that the ability to work is determined first and is then

8

R. at 20-21. The ALJ further concluded that "[t]he claimant has severe impairments. However, the medical evidence does not support the severity of her allegations." R. at 21.

First, there is no indication in the ALJ's decision that he even considered Land's subjective complaints of consistent pain and immobility, much less that he considered the complaints, rejected the complaints, and supported his rejection with specific reasons. Second, Seventh Circuit case law is clear that "a lack of medical evidence alone is an insufficient reason to discredit testimony." *Villano*, 556 F.3d at 562. Accordingly, on remand, the ALJ should consider Land's testimony in determining the intensity, persistence, and limiting effects of her symptoms, and if the ALJ discredits these statements he should specifically explain his reasons for doing so. Additionally, on remand, the ALJ should review and discuss the effect Land's medications and their side effects, as well as Land's combined impairments (both severe and non-severe), have on her RFC.

### C. Development of the Record

Lastly, Land argues that the ALJ failed to fully and fairly develop the record by failing to send her for a psychological consultative examination.

The ALJ has a basic obligation "to develop a full and fair record" regardless of whether a plaintiff is represented by counsel. *Cannon v. Harris*, 651 F.2d 513, 519 (7th Cir. 1981). With regard to consultative exams, an "AJL is not *required* to order such examinations, but may do so if an applicant's medical evidence about a claimed impairment is insufficient." *Skinner v. Astrue*, 478 F.3d 836 (7th Cir. 2007) (emphasis in original) (citing 20 C.F.R. § 416.912(f), 416.917); *see*

---

used to determine the claimants credibility. *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) and citing *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010)). Credibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing. *Shauger*, 675 F.3d at 694 (citing *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir.2011) and *Parker*, 597 F.3d at 921-22).

*also Howell v. Sullivan*, 950 F.2d 343, 348 (noting that "consultative examinations are not required unless they are necessary for the ALJ to make a disability determination."). An ALJ's failure to adequately develop the record, "has been consistently held to constitute good cause sufficient to remand to the Secretary under 42 U.S.C. § 405(g) for taking of additional evidence." *Cannon*, 651 F.2d at 519. However, the "court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures (including consultative examinations) are needed in order to accomplish that goal." *Poyck v. Astrue*, 414 Fed.Appx. 859, 861 (7th Cir. 2011). Notwithstanding the foregoing, a plaintiff "represented by counsel is presumed to have made his best case before the ALJ." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir .2007).

In the present matter, the ALJ made the following determination regarding Land's mental impairments:

> I do find that the claimant's anxiety and depression are non-medically determinable impairments. Despite diagnoses and medication for them, there are no psychiatric records in the file. In fact, the claimant was never sent for a psychological consultative examination (CE) or sought treatment from a mental health professional for these impairments. Therefore, due to a lack of evidence in the file that would show that these are medically determinable impairments, I give good weight to the DDS PRT . . . that reached this conclusion based on a review of the record. Lastly, at the hearing, the claimant did not allege depression and anxiety were limiting her ability to work. She alleged back pain and possibly high blood pressure.

R. at 19. Although the PRT prepared by Dr. Larsen indicated that Land has no medically determinable impairments, Land's medical records reveal that she was diagnosed with depression, that she was regularly prescribed Cymbalta and/or Prozac, and that she often complained of being depressed and/or anxious. Additionally, it is true that Land "did not allege depression and anxiety were limiting her ability to work" during the hearing; however, the ALJ

10

failed to ask Land any questions regarding her psychological conditions during the question-and-answer driven hearing.

Based upon the current medical evidence, Land's medical record warranted at least a discussion of her depression and/or anxiety during the hearing. *See e.g., Thompson v. Sullivan*, 933 F.2d 581 (7th Cir. 1991) (holding that where pro se plaintiff had possible history of alcoholism and other mental problems, "[a]t the very least, more thorough questioning of [the plaintiff] would have been appropriate"). Here, Land regularly complained of depression and/or anxiety and was often medicated for her mental ailments. Furthermore, Dr. Larsen noted that Land had a "nervous breakdown" in 2006 or 2007 and implied that she previously heard voices. Based on this evidence, at the very least, the ALJ should have asked Land about her mental impairments and their effect on her ability to work. He should remedy this omission on remand.

## VI.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **REVERSED** and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this Entry.

SO ORDERED: 01/04/2013

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.